**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **KATANEKA E. PONDER and** | : | **CIVIL ACTION NO.** |
| **SHARON M. STINSON,** | : | |
|     **Plaintiffs,** | : | |
| | : | |
|     **v.** | : | |
| | : | |
| | : | **AUGUST 18, 2015** |
| **JOHN R. ANTONINO, CHARLES P.** | : | |
| **ANTONINO and GATEWAY ONE** | : | |
| **LENDING & FINANCE, LLC,** | : | |
|     **Defendants** | : | |

## COMPLAINT

### I. INTRODUCTION

1.      This is a suit brought by two consumers regarding the purchase and sale

of a motor vehicle pursuant to a retail installment sales contract.  Plaintiffs bring this

action to recover actual damages, statutory damages, reasonable attorney's fees and

costs from Defendants John R. Antonino d/b/a Toyota of Colchester and Charles P.

Antonino d/b/a Toyota of Colchester (collectively, "Toyota of Colchester").  The Plaintiffs

claim that Toyota of Colchester has violated the federal Truth in Lending Act, 15 U.S.C.

§ 1601 *et seq.* ("TILA"), and the Connecticut Unfair Trade Practices Act, Conn. Gen.

Stat. § 42-110a *et seq.* ("CUTPA").

### II. PARTIES

2.      Plaintiff Kataneka E. Ponder ("Ponder") is a consumer and natural person

residing in Middletown, Connecticut.

3. Plaintiff Sharon M. Stinson ("Stinson") is a consumer and natural person residing in Middletown, Connecticut, and is Ponder's mother.

4. Defendants John R. Antonino and Charles P. Antonino are believed to be Connecticut residents who have formed a general partnership that operates an automobile dealership in Colchester, Connecticut under the registered trade name of Toyota of Colchester.

5. Defendant Gateway One Lending & Finance, LLC ("Gateway") is a Delaware limited liability company with headquarters in California.

### III. JURISDICTION

6. Jurisdiction in this court is proper pursuant to 15 U.S.C. § 1640. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

7. This court has jurisdiction over Toyota of Colchester because it regularly conducts business in this state.

8. Venue in this court is proper, because the Plaintiffs reside in Connecticut, and the claims involve a transaction that occurred in Connecticut.

### IV. FACTUAL ALLEGATIONS

9. Prior to June 29, 2015, Stinson received a "voucher" in the mail from Toyota of Colchester informing her that she had been "preapproved" to purchase a motor vehicle.

10. In reality, Plaintiff had not been "preapproved" for anything. Instead, the voucher was a deceptive and fraudulent device in order to generate leads for motor vehicle sales.

11.     On or about June 29, 2015, Stinson called Toyota of Colchester and spoke with Brendan Camileri, who identified himself as the sales manager, to inquire about the voucher she had received.

12.     Stinson told Brendan that she wanted to trade in a 2007 Toyota Matrix and that she believed she owed more for the Matrix than the vehicle's value.

13.     Although the voucher had an expiration date of June 30, 2015, Brendan was not working at the dealership on that date, and he told Stinson that Toyota of Colchester would honor the voucher after the expiration date.

14.     On or about July 1, 2015, Stinson went to Toyota of Colchester with the voucher and met with Brendan.  Brendan directed Stinson to a salesman named Dan.

15.     Dan showed Stinson multiple vehicles, and she agreed to purchase a used 2011 Nissan Maxima (the "Vehicle").

16.     The Vehicle was advertised on Toyota of Colchester's website for a price of $18,245.

17.     Stinson paid a $100 deposit and completed a credit application.

18.     Toyota of Colchester prepared a Retail Purchase Order (the "First Purchase Order") for the Vehicle.

19.     The First Purchase Order listed the purchaser as Stinson and listed a cash price of $18,999 for the Vehicle and a trade-in allowance of $3,000 for the Matrix.

20.     The First Purchase Order also included a charge of $179.00 for etching the vehicle identification number ("VIN") onto the glass of the Vehicle, even though the Vehicle did not have VIN etching on it.

21.     Toyota of Colchester told Stinson to return the next day with three months of bank statements.

22.     Stinson returned to Toyota of Colchester on July 2, 2015 with the bank statements.

23.     Ponder, Stinson's daughter, accompanied Stinson to the dealership so that she could help watch Stinson's other children as Stinson finalized the purchase of the Vehicle.

24.     Toyota of Colchester told Stinson and Ponder that Ponder had to be included on the contract documents because she resided in the same household as Stinson.

25.     Brendan asked Ponder for her income information, stating that they were only using Ponder's information so that they could include Ponder's household income on the credit application.

26.     Ponder asked Brendan if she was being asked to co-sign for the loan for Stinson and he told her no, that because she was living in the same house, they wanted to take into account her income towards the household income.

27.     Toyota of Colchester prepared a second Retail Purchase Order (the "Second Purchase Order").

28.     The Second Purchase Order listed the purchasers as Kataneka E. Ponder and Sharon M. Stinson.

29.     The Second Purchase Order indicated a cash price of $21,799 for the Vehicle and a trade-in allowance of $5,805.42.

30.    The Second Purchase Order also contained a charge of $179.00 for VIN etching, even though the vehicle identification number was not etched on the glass of the Vehicle.

31.    On July 2, 2014, Toyota of Colchester prepared a Retail Installment Contract (the "Contract").

32.    The Contract listed the name of the buyer as Kataneka E. Ponder and the co-buyer as Sharon M. Stinson.

33.    The Contract indicated a cash price of $21,978.00, which included the $179.00 VIN etch fee, a price that was $2,800 more than the price on the First Purchase Order, was greater than the advertised price of the Vehicle, and was greater than the price quoted to Stinson.

34.    The Contract indicated a gross trade-in allowance of $5,805.42 and a net trade-in allowance of $0.00.

35.    Brendan asked Ponder to sign the contract documents.  Ponder asked again if she was being asked to co-sign the loan and Brendan denied that Ponder was a co-signor.

36.    Ponder signed the Contract and agreed to be liable for the payments for Stinson's Vehicle without compensation, and she is a "Co-Signer" within the meaning of the Federal Trade Commission's Credit Practices Rule, 16 C.F.R. § 444.3.

37.    After the documents were signed, Brendan acknowledged that Ponder was a co-signor on the loan, but he told them Stinson could refinance the loan in six months to remove Ponder from the Contract and reduce the monthly loan payment.

38.     This was a false and deceptive statement, because Stinson had not qualified to purchase the Vehicle on her own, and there was no reasonable expectation that the account could be refinanced in six months in light of the anticipated balance and expected value of the Vehicle after six months.

39.     Ponder did not want to co-sign for the loan, and she did not understand that she was co-signing for the loan.

40.     Throughout the process, Toyota of Colchester told Stinson that it was "paying off" the loan on the Matrix.

41.     In reality, the balance owed on the Matrix in excess of its appraised value, a number known only to Toyota of Colchester, had been added to the amount financed in the purchase of the Vehicle.

42.     Stinson did not understand the nature of the transaction that she entered into, and she would not have purchased the Vehicle if she had known that she owed more on the trade-in than Toyota of Colchester was giving her for a trade-in allowance.

43.     Stinson did not realize that she was refinancing the balance of the loan on her trade-in, and she would not have purchased the Vehicle if she understood that a portion of her monthly payment on the Vehicle went towards the payoff of her Matrix.

## V.     CAUSES OF ACTION

### A.     TRUTH IN LENDING ACT (STINSON)

44.     Toyota of Colchester violated TILA by not providing an accurate and true itemization of the amount financed.

45.     Plaintiff has suffered damages because, if she had understood the nature of the transaction, she would have kept possession of the Matrix for a longer time and

6

would have paid the loan balance down to an amount that was less than its trade-in value.

46.     Toyota of Colchester is liable to Plaintiff for her actual damages plus a reasonable attorney's fee.

## B.    CONNECTICUT UNFAIR TRADE PRACTICES ACT (STINSON)

47.     The First Purchase Order listed a cash purchase price that was more than the advertised price for the Vehicle, a violation of CUTPA.

48.     Toyota of Colchester's voucher stating Stinson was preapproved for a loan was false, and it was a deceptive and fraudulent device in order to generate leads for motor vehicle sales, and it constitutes unfair and deceptive acts and practices in violation of CUTPA.

49.     Toyota of Colchester's unfair and deceptive acts have caused Stinson to suffer an ascertainable loss of money or property in that she purchased a Vehicle that she did not need.

50.     Toyota of Colchester is liable to Plaintiff for her actual damages plus, in the discretion of the court, punitive damages and attorney's fees.

## C.    CONNECTICUT UNFAIR TRADE PRACTICES ACT (PONDER)

51.     Ponder signed the Contract and agreed to be liable for the payments for Stinson's Vehicle without compensation, and she is a "Co-Signor" within the meaning of the Federal Trade Commission's Credit Practices Rule, 16 C.F.R. § 444.3.

52.     Toyota of Colchester made false statements and misrepresented the nature of Ponder's liability by stating that she was not co-signing and by informing her

that she would be able to be removed from any obligation after six months, in violation of 16 C.F.R. § 444.3(a)(1).

53.     Toyota of Colchester further violated CUTPA when it obligated Ponder without first informing her of the nature of her liability as co-signer, in violation of 16 C.F.R. § 444.3(a)(2).

54.     Toyota of Colchester further violated CUTPA when it did not provide Ponder with a copy of the Notice to Cosigner required by 16 C.F.R. § 444.3(c).

55.     Toyota of Colchester's actions, as alleged above, constitute unfair and deceptive acts and practices in violation of CUTPA.

56.     Toyota of Colchester's unfair and deceptive acts have caused Ponder to suffer an ascertainable loss of money or property in that she is now responsible for a loan that she did not want.

57.     Toyota of Colchester is liable to Ponder for her actual damages plus, in the discretion of the court, punitive damages and attorney's fees.

58.     Ponder also seeks equitable relief in the form of an order removing Ponder as an obligee under the Contract and requiring the deletion of credit reporting.

## D.   CONNECTICUT UNFAIR TRADE PRACTICES ACT (STINSON & PONDER)

59.     Toyota of Colchester's failure or refusal to sell the Vehicle for its advertised price is a violation of Connecticut Regulation § 42-110b-28(b)(1) and is a *per se* violation of CUTPA, and it has caused Plaintiffs to suffer an ascertainable loss of money or property in that they paid more for the Vehicle than they would have paid if they had been charged the advertised price.

60.     Toyota of Colchester further violated CUTPA when it falsely charged a

VIN etching fee of $179.00 when it had not etched the VIN number onto the glass of the

Vehicle.

61.     Toyota of Colchester is liable to Plaintiffs for their actual damages plus, in

the discretion of the court, punitive damages and attorney's fees.

### E.     LIABILITY AS TO GATEWAY

62.     Gateway, as the assignee of the retail installment contract, is subject to

the Plaintiffs' claims and defenses against Toyota of Colchester in accordance with the

terms of the Contract.

**Wherefore, Plaintiffs claim** actual damages, punitive damages, and a reasonable attorney's fee; and also seek equitable relief in the form of an order removing Ponder from the Contract and requiring the deletion of credit reporting.

**PLAINTIFFS, KATANEKA E. PONDER and SHARON M. STINSON**

By: /s/ *Daniel S. Blinn*
Daniel S. Blinn (ct02188)
Consumer Law Group, LLC
35 Cold Spring Rd. Suite 512
Rocky Hill, CT  06067
Tel. (860) 571-0408
Fax. (860) 571-7457
dblinn@consumerlawgroup.com